ATTORNEYS FOR THE RESPONDENT
Kevin P. McGoff
James J. Bell
Indianapolis, Indiana

ATTORNEYS FOR THE INDIANA SUPREME COURT
DISCIPLINARY COMMISSION
Donald R. Lundberg, Executive Secretary
Seth T. Pruden, Staff Attorney
Indianapolis, Indiana

_In the_

# Indiana Supreme Court

**FILED**
Jun 13 2008, 10:00 am

CLERK
of the supreme court,
court of appeals and
tax court

No. 82S00-0402-DI-90

IN THE MATTER OF:

DOUGLAS W. PATTERSON,

*Respondent.*

Attorney Discipline Action
Hearing Officer Phyllis Kenworthy

June 13, 2008

Per Curiam.

This matter is before the Court on the report of the hearing officer appointed by this Court to hear evidence on the Indiana Supreme Court Disciplinary Commission's "Verified Complaint for Disciplinary Action," and on the post-hearing briefing by the parties. We find that Respondent, Douglas W. Patterson, engaged in attorney misconduct by his conversion of client funds, deceit in concealing his misconduct, and dishonesty with the Disciplinary Commission.

The Respondent's 1989 admission to this state's bar subjects him to this Court's disciplinary jurisdiction. See IND. CONST. art. 7, § 4. For his misconduct, we find that Respondent should be suspended from the practice of law in this state for at least three years.

## Background

The Findings Of The Hearing Officer.  Attorney Maurice Doll ("Doll") was a principal and Respondent was an associate in a law firm ("the old law firm").  The old law firm maintained an account for holding client funds ("the Trust Account").  In December 1999, Doll and Respondent formed a new law firm ("the new law firm"), which maintained two offices—one in Evansville primarily operated by Respondent and one in Vincennes primarily operated by Doll.  The new law firm did not immediately establish a new trust account, but continued to use the Trust Account until a new trust account was opened in May 2000.

The bookkeeper for the new law firm was responsible for closing the Trust Account.  Based upon the testimony of Doll and the bookkeeper, the hearing officer in this case found the Trust Account was used only to hold client funds.  In May 2000, the bookkeeper transferred a portion of the client funds held in the Trust Account to the new trust account, but did not close the Trust Account until all client funds were accounted for.  The bookkeeper advised Respondent to cease making deposits into the Trust Account and to destroy the old checks or turn them over to her.  Unbeknownst to the bookkeeper or Doll, Respondent continued to use the Trust Account.  On August 17, 2000, the bookkeeper discovered that Respondent had written five checks to himself or on his behalf from that account in July 2000.

When Doll confronted Respondent about the matter, Respondent initially denied knowledge of the checks and suggested to Doll that someone on the staff had forged them.  When Doll told Respondent that they should report the matter to the police, Respondent admitted that he had written the checks, adding spontaneously that "he did not have a gambling problem."  Upon further inquiry by Doll, Respondent told Doll that the only checks he had written to himself from the Trust Account were the July 2000 checks.  In fact, a later audit revealed that Respondent had written three checks to himself in April and May 2000.  The total of all these checks was $10,500 ("the converted funds").

In addition to these checks, there was an unusual transaction in January 2000 in which Respondent deposited his own funds into the Trust Account and immediately wrote a check for that amount ($3,412.90) to a church daycare center ("daycare transaction").  In his testimony,

2

Respondent explained he wanted to reimburse the daycare for a tax debt it owed due to a mistake he had made in handling the payroll. He passed his own money through the Trust Account so church members who opposed the daycare center would not discover the source of the reimbursement.

After the new law firm concluded that there was a single client to whom most of the converted funds belonged, the firm notified that client and replaced the money. Respondent eventually repaid the money he had converted.

In his response to the Disciplinary Commission's investigation of this matter, Respondent stated that the first time he wrote checks to himself from the Trust Account was in July 2000 and that he believed the funds he removed did not belong to clients. The hearing officer found these statements had been knowingly false. In addition, the hearing officer found Respondent had made knowingly false statements regarding this matter at the hearing. With respect to the daycare transaction, the hearing officer concluded "it is a misuse of a trust account to launder funds for private dealings with a third non-client party for Respondent's own benefit." Findings at 12.

Respondent's Arguments. Respondent admits he commingled client and personal funds in the Trust Account in the Daycare transaction. He contends, however, that the Commission failed to meet its burden of proof with respect to the other charges. In brief, he argues:

➢ The Trust Account contained not only client funds, but also attorney funds and unknown funds. Respondent points to evidence that funds were occasionally deposited in the wrong account and that the Trust Account was not properly monitored. He states that a former partner of the old law firm told him there were non-client funds in the Trust Account. He suggests that there could have been over $10,500 in non-client funds in the Trust Account at the time he exerted control over the funds in this amount.

➢ The Disciplinary Commission improperly shifted the burden of proof to Respondent to prove that the funds he removed from the Trust Account were non-client funds.

➢ The false statement to Doll denying writing the checks is of minimal importance because he corrected it almost immediately. His misstatement to the Disciplinary

3

Commission about the dates of the checks was a scrivener's error by one of his lawyers.

Respondent asks for consideration of the following mitigating facts: (1) Respondent has not been the subject of any other disciplinary proceeding since the events at issue in this case; (2) all of the funds in question were reimbursed; and (3) Respondent has revised his bookkeeping systems for his trust account.

## Discussion

Findings Of Fact. The Court agrees with the hearing officer's rejection of Respondent's arguments. Respondent's justification of his withdrawal of funds from the Trust Account is that he believed the firm owed him additional compensation and that one check was repayment of a loan. Yet he took the funds out secretly, did not use the established procedure for taking funds out of the Trust Account, took steps to conceal the withdrawals, and initially lied to his partner about writing the checks. His actions are not consistent with how a partner would assert a claim for additional compensation from his firm. We find that there is overwhelming evidence of Respondent's conversion of funds in the Trust Account.

We also find that the hearing officer did not improperly presume the converted funds were client funds and thus shift to Respondent the burden of proving they were not. The hearing officer cited the following evidence that the converted funds were client funds: (1) Respondent knew that only client funds were supposed to be held in the Trust Account; (2) the bookkeeper denied Respondent's contention that she told him there were firm funds in the Trust Account; (3) the bookkeeper believed there were only client funds in the Trust Account at all relevant times; and (4) Respondent did not try to confirm the alleged statement by a former partner of the old law firm that there were non-client funds in the Trust Account.

The hearing officer found that Respondent's statement that he believed the money he removed from the Trust Account was not clients funds was false. This finding is supported by clear and convincing evidence. Even if some of the funds in the Trust Account were not client funds, however, it does not change the character of Respondent's withdrawals. They still constitute conversion, only from the firm or a third party other than clients.

4

Although Respondent quickly corrected his lie to Doll, he did so only because Doll was about to call the police to investigate the matter, and even then he did not tell Doll the entire truth. He did not tell Doll about all the checks and he made no claim at the time to be owed additional compensation. And despite Respondent's contention that the misrepresentations to the Disciplinary Commission were unintentional, there is sufficient evidence to support the hearing officer's rejection of Respondent's credibility on this point, especially in light of his pattern of misrepresentations from Doll's first inquiry about the converted funds through his testimony at the hearing.

Violations. The Court concludes Respondent violated these Professional Rules of Conduct prohibiting the following misconduct:

Rule 1.15(a): Failure to hold property of clients properly in trust.

Rule 8.4(b): Committing a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects.

Rule 8.4(c): Engaging in conduct involving dishonesty, fraud, deceit or misrepresentation.

Sanction. Respondent's misconduct in converting client funds, deceit in concealing his misconduct, and dishonesty with the Commission are among the most serious of ethical breaches.

> Misappropriation of client funds is a grave transgression. It demonstrates a conscious desire to accomplish an unlawful act, denotes a lack of virtually all personal characteristics we deem important to law practice, threatens to bring significant misfortune on the unsuspecting client and severely impugns the integrity of the profession.

Matter of Hill, 655 N.E.2d 343, 345 (Ind. 1995) (converting estate funds warranted disbarment). The Court notes that most of the misconduct occurred in 2000 and Respondent has apparently avoided ethical lapses in the intervening years. We give this little weight in mitigation, however, because Respondent to this date still denies his most serious misconduct and thus has shown no insight into why it happened or how to prevent a recurrence. And his knowingly false statements during the course of these proceedings constitute facts in aggravation.

5

For these reasons, we conclude that Respondent should be suspended from the practice of law for at least three years, after which time he may be reinstated only if he satisfies the requirements of Admission and Discipline Rule 23(4). This includes demonstrating that his attitude towards his misconduct is one of genuine remorse and that he can safely be recommended to the legal profession, the courts and the public as a person fit to act in matters of trust and confidence. *See* Admis. Disc. R. 23(4)(4) and (7).

## Conclusion

Respondent violated Rule 1.15(a), Rule 8.4(b), and Rule 8.4(c) of the Rules of Professional Conduct. For this professional misconduct, the Court suspends Respondent from the practice of law in this state for a period of not less than three years, beginning July 31, 2008. Respondent shall not undertake any new legal matters between service of this opinion and the effective date of the suspension, and Respondent shall fulfill all the duties of a suspended attorney under Admission and Discipline Rule 23(26). At the conclusion of that period, Respondent may petition this Court for reinstatement to the practice of law in this state, provided he pays the costs of this proceeding, fulfills his duties as a suspended attorney, and satisfies the requirements for reinstatement of Admission and Discipline Rule 23(4).

The costs of this proceeding are assessed against Respondent. The hearing officer appointed in this case is discharged.

The Clerk of this Court is directed to give notice of this opinion to the hearing officer, to the parties or their respective attorneys, and to all other entities entitled to notice under Admission and Discipline Rule 23(3)(d).

All Justices concur.

6